UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SOPHIA LORRAINE DYAL,

      Plaintiff,

v.                                       Case No:  6:14-cv-1619-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff, Sophia Lorraine Dyal, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income (SSI).  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum setting forth their respective positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B.  Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work.  *Id*. At this step, the ALJ will consider the claimant's residual functional capacity ("RFC") and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v).  If the claimant is capable of performing other work, she will be found not disabled.  *Id*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for SSI on October 19, 2011. (Tr. 165-70). Plaintiff's application was denied initially on December 28, 2011 (Tr. 105-11) and upon reconsideration on January 20, 2012. (Tr. 112-19). A hearing was held before Administrative Law Judge Albert Tutera (the "ALJ") on March 29, 2013. (Tr. 1-13). The ALJ issued an unfavorable decision on May 3, 2013. (Tr. 36-51). Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on August 5, 2014. (Tr. 14-20). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on October 3, 2014. The parties having filed a joint memorandum of law in support of their respective positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 4, 2011, the date of Plaintiff's application. (Tr. 38). At step two, the ALJ found that Plaintiff had the following severe impairments: lower back pain, bilateral shoulder pain, obesity, and status post breast cancer. (Tr. 38). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 40).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform a reduced range of light work as defined in 20 CFR 416.967(b). She can stoop, kneel, crouch, and crawl occasionally. She can occasionally climb stairs and ramps but never ladders, ropes, or scaffolds. She can reach overhead only occasionally with the right upper extremity and has no limitations with the left upper extremity.

(Tr. 40). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 43). At step five, the ALJ relied on the Grids to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 44).

## II.   Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ properly considered and gave appropriate weight to the opinion evidence in determining that Plaintiff had the RFC to perform a reduced range of light work with some additional limitations; (2) whether the ALJ properly relied on the Grids in concluding that Plaintiff was able to perform a significant number of jobs in the national economy and was not disabled; and (3) whether the ALJ properly assessed Plaintiff's credibility in considering allegations of back and shoulder pain. The Court addresses each issue below.

### a)   Whether the ALJ properly considered and gave appropriate weight to the opinion evidence in determining that Plaintiff had the RFC to perform a reduced range of light work with some additional limitations.

Plaintiff argues that the ALJ erred by failing to provide appropriate weight to the opinions of the treating physicians and failing to consider and weigh all of the limitations outlined by the examining, consultative physician. (Doc. 24 p. 11). In particular, Plaintiff contends that the ALJ failed to sufficiently explain his decision to give only "some weight" to the opinion of Dr. Alex Pardomo, an examining consultative physician. (Doc. 24 p. 12-13). Plaintiff also contends that

the ALJ erred by failing to indicate the weight he assigned to the opinions of Plaintiff's treating physicians, Dr. Hitawala and Dr. Torres. (Doc. 24 p. 14).

Defendant responds that the ALJ properly evaluated and gave appropriate weight to the opinion evidence. (Doc. 24 p. 15). Defendant argues that Dr. Perdomo's opinion was not entitled to any special or consideration as Dr. Perdomo was not a treating physician. (Doc. 24 p. 17). As for the opinions of Dr. Hitawala and Dr. Torres, Defendant contends that Plaintiff completely failed to identify any specific opinions that the ALJ did not properly consider. (Doc. 24 p. 20). Defendant contends that the office notes from Dr. Hitawala and Dr. Torres were objective physical findings and were not medical opinions. (Doc. 24 p. 20).

The Court will begin with Dr. Perdomo. The record reflects that on December 20, 2011, the Social Security Administration referred Plaintiff to Alex Perdomo, M.D., for a physical consultative examination. (Tr. 614). Dr. Perdomo described the claimant as a slightly obese female in no acute distress (Tr. 614). Dr. Perdomo calculated Plaintiff's body mass index to be 33. (Tr. 615). It was noted that Plaintiff was right-handed with chief complaints of chronic back and bilateral shoulder pain. (Tr. 614.). She indicated the pain to be worse over the right shoulder with radiation down into the right upper extremity. (Tr. 614). Additionally, because of her back pain, she stated she was unable to stand or walk for more than one hour at a time and also has difficulty bending or doing any lifting over fifteen pounds. (Tr. 614). However, Plaintiff was seen walking down the hallway without any difficulties and did not require an assistive device for ambulation (Tr. 614). While Plaintiff appeared to be in pain while sitting in the examining room and was observed to change positions often she was able to move from a chair to the examining table without assistance. (Tr. 614). Additionally, Dr. Perdomo found that Plaintiff's range of motion of upper extremities affected at the level of the right shoulder with abduction limited to 90 degrees;

she had a full range of motion of lower extremities, although painful bilateral hip flexion seen with pain radiating into the lower back; she was unable to squat due to complaints of lower back pain; she was able to stand on her toes and heels, although complained of lower back pain with this maneuver; and thoracolumbar spine range of motion was decreased with forward flexion 60 degrees, extension 0 degrees, lateral flexion and rotation 15 degrees both right and left. (Tr. 614). Examination of the neck revealed it to be supple without masses or thyromegaly. The heart showed regular rhythm with no gallops or murmurs. There was no edema, cyanosis, clubbing or ulceration of the extremities and distal pulses were good. Plaintiff had decreased range of motion of the right shoulder with abduction, but range of motion was otherwise full in the upper and lower extremities. Plaintiff was unable to squat due to complaints of lower back pain, but was able to stand on toes and heels. Examination of the back revealed no deformities or tenderness with full range of motion of the cervical spine, decreased thoracolumbar range of motion. Plaintiff had normal coordination and station, normal grip strength and fine manipulation, and normal mental status exam. Dr. Perdomo noted the claimant would benefit from weight loss, more aggressive physical therapy, and a home exercise program.  (Tr. 614-616).

Dr. Perdomo concluded that Plaintiff had a history of chronic back pain with moderate musculoskeletal functional limitation on physical exam of thoracolumbar spine and bilateral lower extremity radiculopathy; osteoarthritis and degenerative disc disease of the lumbosacral spine by history; history of chronic bilateral shoulder pain with moderate musculoskeletal functional limitation on physical exam of right shoulder; obesity; hypothyroidism by history; history of urinary incontinence; and anxiety, depression and Insomnia. (Tr. 614). Dr. Perdomo opined that Plaintiff could stand and walk for four hours a day in an eight-hour workday with normal breaks; could sit for six hours a day in an eight-hour workday with normal breaks; can occasionally lift

and carry, but should limit the weight lifting to no more than five pounds with her right upper extremity and fifteen to twenty pounds with the left upper extremity; she should avoid repetitive use of the right arm including pushing or pulling; she should also avoid repetitive bending, stooping or crouching due to her chronic lower back pain and the moderate musculoskeletal functional limitation found on physical exam of her thoracolumbar spine. (Tr. 615-616).

In his decision, the ALJ explained his decision to accord "some weight" to Dr. Perdomo's opinion as follows:

> As for the opinion evidence, Dr. Perdomo opined the claimant could stand and walk for 4 hours and sit for 6 hours in an 8 hour workday with normal breaks, occasionally lift and carry 5 pounds with the right upper extremity and 20 pounds with the left upper extremity, but should avoid repetitive use of the right arm, bending, stooping, or crouching, with no manipulative limitations (Exhibit 20F, 21F).  Some weight is awarded to this opinion as the undersigned finds that the record supports continued complaints of pain in the right shoulder and therefore some limitations are warranted. However, the undersigned finds that the limitations in standing and walking are not supported by the record and the claimant's activities of daily living.

(Tr. 43).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on

the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

In this case, the Court finds that the ALJ did not err in according "some weight" to the opinion of Dr. Perdomo.  The ALJ articulated his reasons for according only "some weight" to Dr. Perdomo's opinion and specified that some limitations were warranted as to Plaintiff's complaints concerning her right shoulder, but not as to Plaintiff's ability to stand and walk.  The ALJ accounted for Plaintiff's right shoulder pain in his RFC by limiting her to only occasional lifting with the right upper extremity.  (Tr. 40).

While Plaintiff contends that the ALJ erred by failing to include the full extent of the limitations imposed by Dr. Perdomo as to her right shoulder, the Court does not find that the ALJ erred by failing to do so.  Dr. Perdomo was not a treating physician and his opinions were not entitled to any special deference or controlling weight.  As such, the ALJ was not required to adopt all of the limitations that Dr. Perdomo assessed as attributable to shoulder pain.

Likewise, the Court finds the ALJ did not err in his treatment of the records from Dr. Hitawala and Dr. Torres.  Plaintiff identifies no specific opinions from either physician that the ALJ failed to weigh, instead arguing the ALJ should have stated the weight he gave to office notes containing the physicians' physical findings.  Objective physical findings and recordings of Plaintiff's subjective complaints are not medical opinions.  As Plaintiff has failed to identify any opinions the ALJ failed to weigh, the Court finds remand inappropriate.

**b)  Whether the ALJ properly relied on the Grids in concluding that Plaintiff was able to perform a significant number of jobs in the national economy and was not disabled.**

Plaintiff argues that the ALJ erred by mechanically relying on the Grids at step five as she suffered from non-exertional impairments and was unable to perform a full range of work at the

light level.  (Doc. 24 p. 23).  According to Plaintiff, the ALJ was thus mandated to utilize the testimony of a vocational expert.  (Doc. 24 p. 26).  Defendant argues that the ALJ properly determined Plaintiff's non-exertional and manipulative limitations did not erode the occupational base of unskilled light work.  (Doc. 24 p. 28).

There are two avenues by which an ALJ may determine whether the Plaintiff has the ability to adjust to work in the national economy: either by using the Grids or by testimony from a vocational expert. *Phillips*, 357 F.3d at 1239-40.  An ALJ cannot rely exclusively on grids when Plaintiff is unable to perform a full range of work at a given residual functional level or when a Plaintiff has non-exertional impairments that "significantly limit [her] basic work skills." *Id.* at 1242.  "Significantly limit basic work skills" means that the limitations prohibit a plaintiff from performing a "wide range" of work at a given level. *Id.* at 1243.  If Plaintiff cannot perform a full range of work at a given level or has non-exertional impairments that prohibit a wide range of work at a given level, the ALJ may use the grids as a framework, but must also introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that Plaintiff can perform. *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

In this case, the Court finds that the ALJ did not err by relying on the Grids.  In his decision the ALJ expressly determined that the non-exertional postural and reaching limitations he assessed had "little or no effect on the occupational base of unskilled light work." (Tr. 44).  This finding is supported by substantial evidence.  The Social Security Rulings provide that a limitation to occasional stooping, bending, and crouching leaves the occupational base for light and sedentary work "virtually intact." SSR 85-15.  Kneeling and crawling are relatively rare activities even in arduous work, and the limitations on these abilities "would be of little significance in the broad

world of work." *Id*.  Likewise the occupational base is not significantly affected by limitations on the ability to climb ladders, ropes, or scaffolds.  SSR 83-14.  Further, Plaintiff has failed to show that her limitation to only occasional overhead reaching with right upper extremity has eroded the occupational base.

As the limitations the ALJ assessed did not significantly erode the occupational base of light work, the ALJ did not err by applying the Grids at step five.  Therefore, the Court declines to remand this case for the ALJ to consult a vocational expert.

### c) Whether the ALJ properly assessed Plaintiff's credibility in considering allegations of back and shoulder pain.

Plaintiff argues that the ALJ did not adequately assess plaintiff's credibility, which is particularly important because Plaintiff suffers from significant pain.  (Doc. 24 p. 34-35).  Plaintiff argues that the ALJ's credibility determination is nothing more than boilerplate language that does not offer sufficent reasoning to support the ALJ's determination that Plaintiff is not credible.  (Doc. 24 p. 35).  Defendant responds that Plaintiff's argument lacks merit because the ALJ properly applied the Eleventh Circuit pain standard and found that Plaintiff's subjective complaints were not entirely credible.  (Doc. 24 p. 36).

After an ALJ has considered a claimant's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence.  *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (internal citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will

not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

In this case, the Court finds that the ALJ did not err by improperly considering Plaintiff's subjective complaints of pain. In his decision, the ALJ noted Plaintiff's subjective complaints and specified that

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 41). The ALJ proceeded in his analysis with a thorough summary and analysis of the medical evidence of record, noting that despite Plaintiff's complaints of pain, the record showed normal findings, that gait and posture ere normal, that Plaintiff injections for pain resulted in improvement, that Plaintiff took her medications only intermittently and her condition was stable, and that Plaintiff admitted she stopped working for reasons other than her alleged symptoms. (Tr. 41-43). Thus, contrary to Plaintiff's claim, the ALJ's discussion of Plaintiff's credibility was not restricted to this paragraph, but was supported throughout the RFC assessment with record evidence. The ALJ did not totally discount Plaintiff's subjective complaints, but considered them in formulating a limited RFC. Plaintiff has failed to show that the ALJ erred in considering her subjective complaints and, therefore, the Court will affirm on this issue.

**III.     Conclusion**

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 11, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties